JODI LINKER
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:          Joyce_Leavitt@fd.org

Counsel for Defendant EVANS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TIMOTHY EVANS,<br><br>　　　　　Defendant. | **Case No.:** CR 24–00545 YGR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Hearing Date:**　August 14, 2025<br>**Time:**　　　　　1:30 p.m. |

## INTRODUCTION

Mr. Evans will be sentenced by this Court on August 14, 2025, for theft of mail by a postal employee. It has been two years since he committed this offense for which he will now be sentenced and Mr. Evans is ashamed and remorseful for his conduct. Mr. Evans, who was hired as a mail carrier in 2019 by the United States Postal Service (USPS) and initially took great pride in his work, struggled greatly after the Covid-19 virus led to chronic understaffing and increased pressure on those employees who remained. Mr. Evans also was distressed by financial pressures at the time, and turned to alcohol and other maladaptive coping strategies in an attempt to handle the pressures and stressors in his life. These coping strategies directly contributed to his commission of the offense. Surveillance cameras from the US Postal truck in which Mr. Evans was driving in June 2023, captured Mr. Evans consuming alcohol and rifling through packages while on duty delivering mail. *See* Presentence Investigation Report disclosed July 31, 2025 (PSR) at ¶¶ 7-9. It was soon after that incident that Mr. Evans stopped working at the post office, and he was subsequently charged in federal court with embezzlement of mail by a United States Postal Service employee, in violation of 18 U.S.C. § 1709. He pled guilty to this offense on April 9, 2025. PSR at ¶ 2.

The probation officer who prepared the PSR calculates the advisory range to be 4-10 months' custody and recommends that Mr. Evans be sentenced to three years of probation and a $100 special assessment. PSR, Sentencing Recommendation at p. 1. Mr. Evans agrees that a sentence of imprisonment is unwarranted and would be counterproductive in light of the steps he has made towards rehabilitation in the past two years. Instead of three years of probation as recommended by the probation officer however, he asks that the Court to impose a time-served sentence, followed by a one-year term of supervised release. A sentence of one year of supervised release is appropriate based upon the sentencing factors delineated in 18 U.S.C. § 3553(a).

## ARGUMENT

**A time-served sentence followed by one year of supervised release is sufficient but not greater than necessary to meet the goals of sentencing**

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a). Post-*Booker*, a district court is "not mandated to sentence within an applicable

Guideline range because the Sentencing Guidelines are advisory—not mandatory." *United States v. Mix*, 450 F.3rd 375, (9th Cir. 2006), citing *United States v. Cantrell*, 433 F.3d 1269, 1279-81 (9th Cir. 2006). The Court must consider the advisory guidelines range and take them into account, and then apply the factors enumerated in 18 U.S.C. § 3553(a) in its sentencing decision. *Cantrell*, 433 F.3d at 1279-80. For example, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense, the need for just punishment and deterrence, and other sentencing factors. Based on both the guidelines and these factors, the proposed sentence of time served followed by one year of supervised release is sufficient but not greater than necessary to meet the goals of sentencing.

### 1.    Mr. Evans' History and Characteristics

Under 18 U.S.C. § 3553(a), Mr. Evan's history and characteristics are a factor to be considered. "Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Mr. Evans faced immense pressure and stress in his job as a mail carrier with the United States Postal Service (USPS), brought on by the COVID-19 pandemic. He was a mail carrier from 2019-2023 during the height of the pandemic. The postal service experienced a high-volume increase as more and more Americans began to depend on receiving necessities through the mail since shopping in person was limited and risky given the unknown nature of the virus. *See Historian U.S. Postal Service.* "Delivering during the COVID-19 Pandemic: How the U.S. Postal Service Kept the Nation Connected." September 2022 ("Delivering during Covid").[1] While new employees joined the USPS during 2019-2023, the agency lost mail carriers and maintenance employees, increasing the strain on those who remained. *See U.S. Postal Service Office of Inspector General.* "Examining Trends in the Postal Service's Workforce Composition." August 15, 2024. Report Number RISC-RI-24-007 ("Examining Trends").[2] Mr. Evans was one of those that remained, and it was very difficult. As

---

[1] Available at: https://about.usps.com/who/profile/history/pdf/delivering-during-covid-19.pdf
[2] Available at: https://www.uspsoig.gov/sites/default/files/reports/2024-08/risc-ri-24-

DEFENDANT'S SENTENCING MEMORANDUM
*EVANS*, CR 24–00545 YGR

stated in an article on the USPS website, "'In the early days it was so unnerving, and employees were fearful,' said Brennan. 'They were getting sick, or their loved ones were getting sick, or people in their communities were getting sick. And we had a challenge in terms of employee availability.'" Delivering During Covid, at pg.3. Aside from the fears around the virus, the work itself became grueling and impossible. Mailed goods increased not only from household necessities, but COVID testing kits (delivered to homes and testing sites) and lab materials, and election materials. *Id.* at p.12. In 2020, "letter carriers were instructed to check every residential mailbox in the country or ballots from October 26 through October 31. The 2020 presidential election had the highest turnout in U.S. history, with a record 159 million votes cast." *Id*. All of this increased stress and pressure contributed to the commission of the offense. These are the very factors which the Court should consider in granting the requested sentence.

The courts have emphasized lenity where someone commits an offense while suffering from significantly reduced mental capacity which contributed to the commission of the crime, and voluntary drug use does not negate the applicability of this factor. *See, e.g United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993)(The goal is lenity towards defendants whose ability to make reasoned decisions is impaired); *United States v. Lewinson*, 988 F.2d 1005 (9th Cir. 1993)(departure where depression contributed to commission of the offense finding that drug use was both "a product and factor of his impaired condition.").

In this case, Mr. Evans explained that at the time of the offense he was stressed out, both emotionally and financially, and he turned to alcohol as a means of avoidance. Moreover, according to his wife as well, Mr. Evans' alcohol use contributed to his commission of the offense. PSR at ¶ 52. Mr. Evans has acknowledged his drinking problem and attended Alcoholics Anonymous, as well as participating in other treatment since his offense conduct in 2023. PSR at ¶¶ 51, 52,

Chemical dependency must be addressed like any other chronic illness, according to the National Institute on Drug Abuse, "Treatment enables people to counteract addiction's powerful

---

007.pdf#:~:text=These%20employees%20have%20been%20particularly%20difficult%20for.mission%2C%20with%20recent%20OIG%20audits%20of%20several

disruptive effects on the brain and behavior and to regain control of their lives." *How Effective is drug addiction treatment? Principles of Drug Addiction Treatment: A Research Based Guide* (Third Edition), National Institute on Drug Abuse.[3] Mr. Evans' diminished capacity and addiction at the time of the offense, both of which he has been addressing, are factors which support the imposition of a time-served sentence to be followed by one year of supervised release. Currently, Mr. Evans is working, participating in counseling, and according to his wife, since his arrest, Mr. Evans has come to terms with the fact that he lost a good job with good benefits, and she has seen positive changes in him. PSR at ¶ 51. A sentence of time served followed by one year of supervised release is appropriate.

## 2.    The Nature and Circumstances of the Offense

The Court is required to consider the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). Here, Mr. Evans pled guilty to mail theft, in violation of 18 U.S.C. § 1709. Mr. Evans agrees that he stole mail while working for the post office. *See* Application for Permission to Enter Plea of Guilty and Order Accepting Plea filed April 9, 2025. Mr. Evans agrees that the nature and circumstances of the offense are serious.

In mitigation, Mr. Evans had worked for more than three years for the postal service and took pride in his position as a mail carrier. Unfortunately, the global COVID-19 pandemic happened within a year of him starting the job. Due to the long hours and increased demands, as well as the stress from the changing global situation and other financial issues, Mr. Evans isolated and turned to alcohol as a coping strategy. His thinking was clouded by the alcohol use, and he made the poor decisions which lead to this case. Mr. Evans should have taken leave or quit but his thinking was not clear and he did not appreciate the impact of these factors on his decision-making. Since that time however, Mr. Evans checked himself into a rehabilitation center while living in Maryland in 2024 to address his addiction. PSR at ¶ 57. He also attends substance abuse counseling and completed other programming as well. Based upon the nature and circumstances of the offense, a time-served sentence followed by one year of supervised release is appropriate.

---

[3] Available at https://www.drugabuse.gov/publications/principles-drug-addiction-treatment-research-based-guide-third-edition/frequently-asked-questions/how-effective-drug-addiction-treatment

### 3. Post-Offense Rehabilitation

This Court can consider "post-crime maturation and self-rehabilitation" at sentencing. *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008). The Supreme Court has "made clear that post-sentencing or post-offense rehabilitation - particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct - [is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall*, 552 U.S. at 59 (emphasis added)). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)).

Here, Mr. Evans' post-offense rehabilitation is relevant to the Court's decision and should be considered. As the PSR indicates, since his commission of the offense in 2023—more than two years ago—Mr. Evans completed a rehabilitation program in Maryland and has been attending treatment and testing for drug use in this district. PSR at ¶ 59. Mr. Evans also participates in mental health counseling, and he completed an Impact Panel class in connection with the requirements of his supervision in Maryland (where Mr. Evans is simultaneously being supervised for an offense which occurred in October 2024, before he was required to return to California months later to address the current offense from 2023). *See, e.g.* PSR at ¶ 34. Mr. Evans is also working with the goal of paying restitution and is dedicated to both personal, as well as professional improvement. Mr. Evans is working to become a better father, husband and community member. Mr. Evans' post-offense rehabilitation is a factor which supports the requested variance. 18 U.S.C. § 3553(a).

### 4. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment and Deterrence

A sentence of time served followed by one year of supervised release adequately promotes respect for the law, provides just punishment and serves as adequate deterrence for Mr. Evans. He recognizes the seriousness of his offense. The loss of his government job, stigma of a felony conviction (and the difficulties that brings for obtaining employment and housing), and requirement that he be supervised for one year if the requested sentence is imposed, all constitute just punishment

DEFENDANT'S SENTENCING MEMORANDUM
*EVANS*, CR 24–00545 YGR

and adequate deterrence. For Mr. Evans, whose only prior felony was a wobbler under California state law[4], this felony offense has outsized ramifications for the rest of Mr. Evans' life. Moreover, if the Court accepts Mr. Evans' requested sentence, he will be subject to the terms of supervised release for an additional year. The consequences of Mr. Evans' actions will reverberate long after his sentence is completed.

As a result of his actions and this conviction, Mr. Evans has been changed. The effects of this conviction will stay with him long after he completes the sentence in this case, as described below. Mr. Evans' request that the Court sentence him to one year of supervised release is consistent with this factor as well.

### 5. Collateral consequences in this case support imposition of a non-custodial sentence and Mr. Evans is requesting a one-year term of supervised release

The Court should impose a non-custodial sentence based upon the collateral consequences of Mr. Evans' guilty plea and he is requesting a one-year term of supervised release. The Supreme Court in *Gall* made abundantly clear that while supervision (either as a term of probation or of supervised release) is less severe than a term of incarceration, it is nonetheless a significant punishment as it substantially restricts an individual's liberty.

> Offenders . . . [are] subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes . . . and refrain from . . . drinking. USSG § 5B1.3.

*Id.* at 595–596 (internal footnotes omitted). In this case, the collateral consequences of which Mr. Evans will suffer for the rest of his life as a result of this felony conviction are myriad. The consequences that come from pleading guilty to any felony offense include forfeiting the right to

---

[4] This particular charge may actually be considered a misdemeanor which can be further expunged or reduced under California state law. *Id.* at ¶ 31.

DEFENDANT'S SENTENCING MEMORANDUM
*EVANS*, CR 24–00545 YGR

6

possess a firearm and the right to vote, the right to hold certain offices and the right to obtain certain licenses. In addition, employment and housing opportunities inevitably dwindle as a result of a felony conviction, and other restrictions that flow from being a felon are far reaching. Moreover, federal offenses are not expungeable and this conviction will remain on Mr. Evans' criminal record for the rest of his life, absent a presidential pardon. The consequences of this felony conviction will be felt long after Mr. Evans completes his sentence in this case. A term of custody will not further fulfill the goals of sentencing in this case. Rather, a non-custodial sentence is appropriate in this case. A time-served sentence to be followed by one year of supervised release, is most sufficient to meet the goals of sentencing in light of the factors discussed above.

## CONCLUSION

For the reasons set forth above, Mr. Evans respectfully requests that the Court impose a sentence of time served plus one year of supervised release. Such a sentence is sufficient but not greater than necessary to achieve the sentencing goals laid out in § 3553(a).

Dated:    August 7, 2025

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

            /S/
JOYCE LEAVITT
Assistant Federal Public Defender